**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 96-50009
Summary Calendar
_____


DEBRA LANCASTER,

Plaintiff-Appellant,

VERSUS

H. E. BUTT GROCERY CO., INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas
(MO-95-CV-56)
_____
July 31, 1996


Before SMITH, BENAVIDES, and DENNIS, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]


Debra Lancaster sued H.E. Butt Grocery Co., Inc. ("HEB"),
alleging sexual harassment and constructive discharge in violation
of title VII. Both parties consented to trial by a magistrate
judge. After extensive discovery, the magistrate judge granted
HEB's motion for summary judgment, finding that the facts alleged

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

failed to demonstrate a hostile workplace environment or the existence of constructive discharge. We affirm summary judgment on the constructive discharge claim and reverse summary judgment on the hostile environment claim and remand.

I.

Lancaster was employed by HEB as the manager of the floral department of HEB's Big Spring, Texas, store beginning September 15, 1992. During the three months of her employment,[1] Tom Land, the store manager, and other supervisors engaged in the conduct that gave rise to this suit.

The alleged hostile behavior falls into two categories: neutral comments and sex-based comments. The neutral remarks and incidents were all related to the supervisors' management of the floral department. The sex-based remarks took the form of sexually derogatory comments. Lancaster's summary judgment evidence relies on both types of evidence to demonstrate the existence of a sexually hostile workplace environment, intermingling incidents concerning the floral department with the alleged sexual remarks.

The summary judgment evidence, when viewed in the light most favorable to Lancaster, demonstrates that the HEB management treated its employees, and in particular its floral employees, with little respect. Lancaster, when asked to describe the hostility

_____

[1] Lancaster quit on December 18, 1992.

she faced at HEB, testified that she considered the ridiculing of the floral department and its personnel as part of that hostility.

Lancaster's problems with HEB management are detailed in her own affidavit and that of Gail McConnell. McConnell's affidavit demonstrates that Lancaster took great pride in the floral department and was upset whenever Land would interfere or make changes in the department.

McConnell describes two incidents that demonstrate the problems Lancaster was having. At the grand opening of the store, Lancaster had an argument with Joe Villareal and John Contreras when the two supervisors tore down a floral arrangement to make room for a greeting card display. Another time, McConnell recalls that Lancaster was visibly upset when Land removed a ribbon rack from the floral department because, according to him, it "look [sic] like a piece of shit!!!!"

Lancaster's own affidavit prominently lists the state of the floral department as one of the complained-of conditions. The department's problems included a lack of shelving space and staffing, a cold working environment, a low priority for display space, and an utter disregard for employees' marketing ideas. Lancaster complains that Land did nothing to alleviate these problems. The summary judgment evidence also demonstrates that Villareal and Contreras consistently treated employees poorly, regularly throwing tantrums and purposefully (almost sadistically) making work conditions stressful.

It is in this context that the sexually derogatory remarks fit into Lancaster's hostile environment claim. As Lancaster describes it, Land once commented that a back belt issued by HEB made her breasts look larger. Contreras also made comments to other women about the back-support belts. Sometime later, Lancaster alleges that Land's attitude toward her changed because she instructed one of her assistants not to leave the store for coffee with him. Throughout this period, Land made between ten and twelve sexually derogatory comments, ranging from "dumb blond" or "dumb blond women" to "dumb blond women don't have what it takes for this business" and "what can you expect, you are a dumb blond woman."

Lancaster also alleges that Land invited her, on two occasions, to the Ponderosa Inn[2] for coffee so that the two could discuss the floral department. Ricky Ornelas also asked Lancaster to go out for a drink after work. The first time, he said, "Me and the boys are going down to the Brewery for a beer after work. Do you want to meet us down there, Debra?" The second time he asked Lancaster to go, she asked whether his wife was accompanying him. He angrily replied "no." Lancaster also alleges that Land once said "I had been working on Dewey Slape,"[3] and she found the remark to be offensive.

Lancaster relies on three specific incidents as examples of

---

[2] According to Lancaster, the Ponderosa is a sleazy motel where people meet for affairs.

[3] Dewey Slape is a refrigeration contractor.

4

the type of harassment she faced.  The first occurred when she alerted Land to a refrigerator problem in the floral department. Land told Lancaster, "I did not think this came from a woman. Dewey already told me this.  This came from a man."  The second incident occurred at a store manager's meeting at which Land commented, "It is hard to believe a blond woman like you would probably write these things down in your book."  The third incident occurred when a shipment of flowers was improperly stored, resulting in $2,000 of damaged flowers.  Land laughed and said, "$2,000 lost on produce.  That is what you women deserve."

## II.

This court reviews a grant of summary judgment *de novo*.  *Hanks v. Transcontinental Gas Pipe Line Corp.*, 953 F.2d 996, 997 (5th Cir. 1992).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue

for trial.  *Hanks*, 953 F.2d at 997.

We begin our determination by consulting the applicable substantive law to determine what facts and issues are material. *King v. Chide*, 974 F.2d 653, 655-56 (5th Cir. 1992).  We then review the evidence relating to those issues, viewing the facts and inferences in the light most favorable to the non-movant.  *Id.*  If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented.  *Celotex*, 477 U.S. at 327.

A.

To maintain a claim of sexual harassment in the workplace, a plaintiff must demonstrate (1) that she belongs to a protected class; (2) that she was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; (4) that the harassment affected a "term, condition or privilege of employment"; and (5) that the employer either knew or should have known of the harassment and failed to take prompt remedial action.  *Jones v. Flagship Int'l*, 793 F.2d 714, 719-20 (5th Cir. 1986), *cert. denied*, 479 U.S. 1065 (1987).

Sexually discriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment that violates title VII.  *Harris v. Forklift Sys.,*

6

*Inc.*, 510 U.S. 17, __, 114 S. Ct. 367, 370-71 (1993) (*citing Meritor Savings Bank v. Vinson*, 477 U.S. 57, 65, 67 (1986)).  To make out a claim for hostile environment sexual harassment, the plaintiff must produce evidence of (1) sexually discriminatory intimidation, ridicule and insults that are (2) sufficiently severe or pervasive that they (3) alter the conditions of employment and (4) create an abusive working environment. *Harris*, 510 U.S. at __, 114 S. Ct. at 370.

In determining whether a working environment is objectively "hostile" or "abusive," all the surrounding circumstances must be considered, including

> the frequency of the discriminatory conduct; its sever-ity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreason-ably interferes with an employee's work performance.

*510 U.S. at __, 114 S. Ct.* at 371.

Lancaster has carried her burden of demonstrating a genuine issue of material fact as to the existence of a hostile workplace environment.  Although this is a close case for purposes of summary judgment, the alleged sex-based conduct[4] could lead a reasonable jury to find a pervasive hostile or abusive environment that impaired Lancaster's work performance.  The existence of unwanted sexual advances, the number of comments in a relatively short time

---

[4] Lancaster's allegations of non-discriminatory, sex-neutral hostile conduct cannot be used to support a hostile environment claim.  Title VII does not protect employees from mere hostile conduct, but only from hostile conduct that is based on their protected status. *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1991).

7

period, the number of perpetrators, the wide array of victims, and the fact that the perpetrators were supervisors distinguish this case from *DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 593 (5th Cir.), *cert. denied*, 116 S. Ct. 473, *and cert. denied*, 116 S. Ct. 473 (1995), where the only conduct at issue took the form of mere offensive utterances.

B.

The magistrate judge also held that Lancaster failed to show constructive discharge, as a matter of law, because she did not take advantage of the HEB grievance procedure. Lancaster's only argument is that Land's comment that he finally got rid of her proves constructive discharge. We agree that Lancaster cannot demonstrate constructive discharge and thus cannot recover damages for backpay. *See Landgraf v. USI Film Prods.*, 968 F.2d 427, 429 (5th Cir. 1992).

Lancaster misunderstands the nature of a constructive discharge claim. "In order to demonstrate constructive discharge, [the plaintiff] must prove that 'working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" *Landgraf*, 968 F.2d at 429 (*citing Bourque v. Powell Elec. Mfg. Co.*, 617 F.2d 61, 65 (5th Cir. 1990)); *Jurgens v. EEOC*, 903 F.2d 386, 390-91 (5th Cir. 1990). Proof of a hostile work environment is insufficient to

8

support constructive discharge, as "the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment."  *Landgraf*, 968 F.2d at 430; *Pittman v. Hattiesburg Mun. Separate Sch. Dist.*, 644 F.2d 1071, 1077 (5th Cir. Unit A May 1981) (holding that constructive discharge requires "aggravating factors").

The summary judgment evidence does not raise a genuine issue of material fact with regard to constructive discharge.  The evidence shows that Lancaster never raised a complaint with HEB management regarding the alleged sexual harassment.  Moreover, there is no evidence that a reasonable employee would have considered the grievance procedure as futile.  As the magistrate judge correctly held, "[a] 'reasonable employee,' instead of resigning would have first pursued a formal grievance with HEB management."  *See Ugalde v. W.A. McKenzie Asphalt Co.*, 990 F.2d 239, 242-43 (5th Cir. 1993) (holding that a reasonable employer would file a grievance before walking off the job); *McKethan v. Texas Farm Bureau*, 996 F.2d 734, 741 (5th Cir. 1993) (same); *see also Bourque*, 617 F.2d at 66 ("[W]e believe that society and the policies underlying Title VII will be best served if, whenever possible, unlawful discrimination is attacked within the context of existing employment relationships.").

For the foregoing reasons, the judgment is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.